IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUMAH ALI-THOMAS MOORE,

        Plaintiff,

    v.

M. THOMAS, et al.,

        Defendants.

_____/

No. C 06-02105 SBA (PR)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND MOTION TO DISMISS; ADDRESSING
PENDING MOTIONS; AND REFERRING
CASE TO PRO SE PRISONER
SETTLEMENT PROGRAM**

(Docket nos. 57, 83, 86, 88, 91, 97)

**INTRODUCTION**

    Plaintiff Jumah Ali-Thomas Moore, a state prisoner who has recently been transferred from Pelican Bay State Prison (PBSP) to the California Medical Facility, filed this civil action in the Monterey County Superior Court, Moore v. Thomas, et al., Case no. M76479, alleging various claims stemming from his incarceration at Salinas Valley State Prison (SVSP).  On March 21, 2006, this action was removed to this Court pursuant to 28 U.S.C. § 1441(b).

    Defendants now move for summary judgment on the grounds that there are no material facts in dispute and that they are entitled to judgment as a matter of law.  In the alternative, Defendants move to dismiss for failure to exhaust administrative remedies, and for failure to comply with the California Tort Claims Act.

    For the reasons outlined below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment and motion to dismiss.  The Court also addresses Plaintiff's pending motions.

**PROCEDURAL BACKGROUND**

    On October, 24, 2005, Plaintiff filed a complaint in the Monterey County Superior Court, alleging, in part: (1) excessive use of force by Defendant SVSP Correctional Officer L. Baez stemming from an incident on August 8, 2004; (2) failure by Defendants SVSP Correctional Officers L. Zamora, E. Pulido, M. Thomas, and C. Tsai to intervene when Defendant Baez used excessive force against Plaintiff; (3) inadequate medical treatment by Defendants SVSP Nurses M. Arroyo, C. Vogel-Pace and C. Matthews; (4) deliberate indifference to Plaintiff's medical needs by

United States District Court
For the Northern District of California

Defendants SVSP Physicians J. Pistone, R. Gibbs, and I. Grillo.  (Compl. at 2-10.)  Plaintiff also alleged state claims of negligence, conspiracy, intentional infliction of emotional distress, and the intentional torts of assault and battery, arising from the same acts and events that gave rise to his federal claims.  (Id.)

As mentioned above, Defendants Zamora and Pulido removed this case to federal court on March 21, 2006.  Removal was proper because Plaintiff asserted federal claims on the face of his complaint.  See 28 U.S.C. § 1441(b).

In an Order dated October 30, 2008, the Court found that Plaintiff alleged a cognizable excessive force claim against Defendants Baez, Tsai, and Zamora.  (Sept. 30, 2008 Order at 4.)  However, the Court dismissed Plaintiff's excessive force claim against Defendants Pulido and Thomas for failure to allege facts showing the basis for the constitutional liability.  (Id.)  The Court also found that Plaintiff alleged a cognizable deliberate indifference claim against Defendants Arroyo, Vogel-Pace, Matthews, Pistone, Grillo, and Gibbs, and cognizable state claims of negligence, conspiracy, intentional infliction of emotional distress, and the intentional torts of assault and battery.  (Id. at 5-6.)  Plaintiff's remaining claims were dismissed.  (Id. at 6.)

On November 17, 2008, Plaintiff filed an amendment to the complaint and alleged additional facts relating to his excessive force claim against Defendants Pulido and Thomas.  (Amendment to the Compl. at 1-2.)

In a notice dated November 17, 2008, the Court informed Plaintiff and Defendants that service has been ineffective on Defendants Grillo, Matthews, Arroyo, and Vogel-Pace.  (Nov. 17, 2008 Notice at 1.)  The Court directed Plaintiff to provide the Court the current addresses of these Defendants by December 17, 2008, and informed Plaintiff that the failure to do so would result in the dismissal of his claims against them.  (Id.)

In an Order dated December 9, 2008, the Court found that Plaintiff alleged a cognizable excessive force claim in his amendment to the complaint against Defendant Thomas, but dismissed his claim against Defendant Pulido with prejudice.  (Dec. 9, 2008 Order at 3-4.)

In another Order dated December 18, 2008, the Court noted that service continued to be

United States District Court
For the Northern District of California

1    ineffective on Defendants Grillo, Matthews, Arroyo, and Vogel-Pace, and granted Plaintiff's request

2    for an extension of time to locate these Defendants.  (Dec. 18, 2008 Order at 2, 5.)  The Court again

3    directed Plaintiff to provide the Court the current addresses of these Defendants by January 20,

4    2009, and informed Plaintiff that the failure to do so would result in the dismissal of his claims

5    against them.  (Id. at 6-7.)

6         In another Order dated January 21, 2009, the Court referred the case to Magistrate Judge

7    Vadas for a settlement proceeding that was to take place on or before March 23, 2009.

8         On January 29, 2009, Defendants filed the instant motion for summary judgment and motion

9    to dismiss.

10        On February 24, 2009, Plaintiff, Defendants' counsel, and a representative of the Warden met

11   for a settlement conference before Judge Vadas.  (Feb. 25, 2009 Report of Settlement Proceeding at

12   1.)  The parties agreed to attempt a global settlement conference on or before April 26, 2009.  (Id. at

13   2.)

14        In an Order dated February 25, 2009, the Court found that Plaintiff failed to provide the

15   addresses of Defendants Matthews, Arroyo, and Vogel-Pace by the January 20, 2009 deadline, and

16   dismissed Plaintiff's claims against these Defendants.  (Feb. 25, 2009 Order at 2-3.)  In response to

17   his request for the Court's assistance in obtaining the current address of Defendant Grillo, Plaintiff

18   was granted another extension of time and was given until March 23, 2009 to provide the Court with

19   Defendant Grillo's current address.  (Id. at 4-5.)  Plaintiff had informed the Court that because

20   Defendant Grillo is retired, a current address for this Defendant could be obtained from either the

21   California Board of Physicians, the Public Employees' Retirement System, or the California State

22   Personnel Board.  (Id. at 4.)  Because Plaintiff could not communicate directly with the

23   aforementioned offices, the Clerk of the Court was directed to send a letter to each of the

24   aforementioned offices and to inquire about whether these offices could furnish the Court with the

25   current address for Defendant Grillo.  (Id.) Finally, the Court stated that in the event that the

26   aforementioned offices were unable to furnish the current address for Defendant Grillo, Plaintiff was

27   directed to continue his attempts to locate Defendant Grillo.  (Id. at 4-5.)  Plaintiff was again

28

United States District Court
For the Northern District of California

1    informed that failure to do so will result in the dismissal of his claims against Defendant Grillo.  (Id.

2    at 6.)

3         On March 12, 2009, Plaintiff filed a motion for reconsideration of the Court's dismissal of his

4    claims against Defendants Matthews, Arroyo, and Vogel-Pace.  (Pl.'s Mar. 12, 2009 Mot. for

5    Recons. at 1.)

6         Also on March 12, 2009, Plaintiff filed another motion for reconsideration of the Court's

7    February 25, 2009 Order, specifically relating to the March 2, 2009 deadline for the filing of the

8    opposition.[1]  (Pl.'s Mar. 12, 2009 Mot. for Recons. Deadline at 1.)

9         On March 13, 2009, Plaintiff filed his opposition.  On the same day, Plaintiff also filed a

10   request for an extension of time to correct his opposition, and to photocopy the exhibits in support of

11   his opposition.  (Pl.'s Request for an Extension of Time at 1.)

12        On March 16, 2009, Plaintiff filed an amended motion for reconsideration of the Court's

13   dismissal of his claims against Defendants Matthews, Arroyo, and Vogel-Pace.[2]  (Pl.'s Mar. 16, 2009

14   Am. Mot. for Recons. at 1.)

15        On March 19, 2009, the California Board of Physicians furnished the Court with an address

16   for Defendant Grillo, which was filed under seal.

17        On March 20, 2009, Plaintiff submitted another opposition, which is identical to the one filed

18   on March 13, 2009 except that it includes exhibits in support of the opposition.  On the same date,

19   he also filed a motion for additional exhibits.[3]

20        On March 23, 2009, the Court issued a summons to Defendant Grillo using the address

21   furnished by the California Board of Physicians.  The summons was filed under seal.  Thereafter, the

22   

23        [1]  The Court construes Plaintiff's March 12, 2009 motion for reconsideration (docket no. 83)
     as another motion for an extension of time to file his opposition to Defendants' motion for summary
24   judgment and motion to dismiss.  Plaintiff's motion for an extension time to file his opposition is
     GRANTED.  The time in which Plaintiff may file his opposition to Defendants' motion will be
25   extended nunc pro tunc to March 20, 2009, the date Plaintiff's opposition and attached exhibits in
     support of the opposition were filed.

26   

27        [2]  Because Plaintiff filed an amended motion for reconsideration on March 16, 2009, the
     Clerk terminated Plaintiff's March 11, 2009 motion for reconsideration.

28        [3]  Plaintiff's motion for additional exhibits (docket no. 91) is GRANTED.

4

**United States District Court**
For the Northern District of California

1  Clerk was informed by the U.S. Marshal's Office that they were unable to serve Defendant Grillo
2  with the summons because that address was incorrect.

3       On April 3, 2009, Defendants filed their reply.

4       On April 8, 2009, Plaintiff filed a motion for an extension of time to complete the global
5  settlement conference.

6       On April 10, 2009, Plaintiff filed a "Motion for Temporary, Preliminary and Permanent
7  Injunction and Temporary Restraining Order Against the Illegal Release and Disclosure of the
8  Petitioner's Confidential and Private Medical Health Records, and For the Return of the Health
9  Records to the Petitioner," which relates to the fact that Defendants had included his medical records
10  as an exhibit in support of their motion for summary judgment and motion to dismiss.

11       In an Order dated April 22, 2009, the Court granted Plaintiff's motion for an extension of
12  time to complete the global settlement conference.  The time in which the parties were to complete
13  the global settlement conference was extended up to and including May 25, 2009.

14       On March 19, 2009, Plaintiff, Defendants' counsel, and a representative from the California
15  Department of Corrections and Rehabilitation (CDCR) met for a global settlement conference before
16  Judge Vadas.  (Mar. 19, 2009 Report of Settlement Proceeding at 1.)  The parties were unable to
17  reach an agreement.  (Id. at 2.)

18                                    **DISCUSSION**

19  **I.    Motion for Summary Judgment**

20       **A.    Legal Standard**

21       Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that
22  there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as
23  a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of
24  the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact
25  is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving
26  party.  Id.

27       The party moving for summary judgment bears the initial burden of identifying those
28

5

United States District Court
For the Northern District of California

1  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue

2  of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will

3  have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable

4  trier of fact could find other than for the moving party. But on an issue for which the opposing party

5  will have the burden of proof at trial, as is the case here, the moving party need only point out "that

6  there is an absence of evidence to support the nonmoving party's case." Id. at 325.

7      Once the moving party meets its initial burden, the nonmoving party must go beyond the

8  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

9  genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over

10  material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

11  Anderson, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine

12  issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has

13  the burden of identifying, with reasonable particularity, the evidence that precludes summary

14  judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to

15  summary judgment as a matter of law." Celotex, 477 U.S. at 323.

16      The district court's function on summary judgment motion is not to make credibility

17  determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W.

18  Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence and the

19  inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving

20  party. See id. at 631. If evidence produced by the moving party conflicts with evidence produced

21  by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving

22  party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). A

23  court may not disregard direct evidence on the ground that no reasonable jury would believe it. See

24  id. (where nonmoving party's direct evidence raises genuine issues of fact but is called into question

25  by other unsworn testimony, district court may not grant summary judgment to moving party on

26  ground that direct evidence is unbelievable).

27      The district court may not resolve disputed issues of material fact by crediting one party's

28

6

version of events and ignoring another.  Wall v. County of Orange, 364 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury.").  But "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776-77 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders).

### B.    Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002). Unauthenticated documents and hearsay evidence are inadmissible, and consequently, may not be considered on summary judgment.  Orr, 285 F.3d at 773-74, 778.

In support of their motion for summary judgment, Defendants submit declarations by Defendants Baez (docket no. 67), Tsai (docket no. 65), Zamora (docket no. 64), Thomas (docket no. 60), Gibbs (docket no. 62), Pistone (docket no. 63), as well as declarations by Defendants' attorney, Deputy Attorney General Trace O. Maiorino, (docket no. 58), PBSP Chief Medical Officer, Dr. Michael Sayre, (docket no. 61), and former SVSP Correctional Lieutenant Celaya (docket no. 66).

Attached to Deputy Attorney General Maiorino's declaration are copies of Plaintiff's medical records,[4] and Plaintiff's administrative appeals regarding his medical treatment.  (Maiorino Decl., Ex. A, B, C, D.)  Also attached to Deputy Attorney General Maiorino's declaration are the declarations by the PBSP custodian of health records and PBSP custodian of records certifying that the attached medical records and administrative appeals are true and correct copies of the original documents.  (Id.)  Because these documents have been properly authenticated pursuant to Federal

---

[4] Plaintiff's motion relating to Defendants' alleged "illegal" disclosure of his medical records will be resolved below.

7

United States District Court
For the Northern District of California

1  Rule of Evidence 803(6), the Court will consider them in connection with Defendants' motion for

2  summary judgment.

3      Attached to Defendant Baez' declaration is a copy of portions of the Rules Violation Report

4  relating to the August 8, 2004 incident. (Baez Decl., Ex. A.) Attached to Lieutenant Celaya's

5  declaration is a copy of the August 8, 2004 incident report. (Celaya Decl., Ex. A.) Included in each

6  of these attachments is a declaration by the PSPB custodian of records certifying that the respective

7  attachments are true and correct copies of the original documents. (Baez Decl., Ex. A; Celaya Decl.,

8  Ex. A.) Because these documents have been properly authenticated pursuant to Federal Rule of

9  Evidence 803(6), the Court will also consider them in connection with Defendants' motion for

10  summary judgment.

11      Attached to Defendant Tsai's declaration is a copy of a portion of the August 8, 2004 incident

12  report that Defendant Tsai had written. (Tsai Decl., Ex. A.) Similarly, attached to Defendant

13  Zamora's declaration is a copy of a portion of the August 8, 2004 incident report that Defendant

14  Zamora had written. (Zamora Decl., Ex. A.) Included in each of these attachments is a declaration

15  by the PSPB custodian of records certifying that the respective attachments are true and correct

16  copies of the original documents. (Tsai Decl., Ex. A; Zamora Decl., Ex. A.) Because the entire

17  incident report, attached to Lieutenant Celaya's declaration, is an exhibit already considered in

18  connection with Defendants' motion for summary judgment, there is no need to consider the portion

19  of the same report that is attached in the declarations of Defendants Tsai and Zamora.

20      Plaintiff verified his complaint, his amendment to the complaint, and his opposition by

21  signing them under penalty of perjury. In support of his opposition, Plaintiff submits his

22  declarations and a declaration by a fellow inmate, Steve Agin. (Opp'n, Ex. D, E, G.) Plaintiff

23  verified his declarations by signing them under penalty of perjury. Inmate Agin's declaration was

24  based on his personal knowledge of the incident between Plaintiff and Defendant Baez, and was

25  signed under penalty of perjury; therefore, it will be considered by the Court. See Fed. R. Civ. P.

26  56(e). The Court will treat Plaintiff's verified complaint, his verified amendment to the complaint,

27  his verified opposition, his declaration, and Inmate Agin's declaration as affidavits in support of his

28

**United States District Court**
For the Northern District of California

1   opposition under Rule 56 of the Federal Rules of Civil Procedure.

2       **C.**    <u>**Factual Background**</u>

3           **1.**    <u>**Plaintiff's Version**</u>

4        Beginning in June, 2003, Plaintiff filed administrative grievances in the CDCR as well as

5   civil rights complaints in the state and federal courts, including his prior civil rights action involving

6   a denial of outdoor exercise claim filed in this Court in Case No. C 03-03104 SBA (pr).  (Opp'n at 1;

7   Pl.'s Decl ¶ 1.)  In July, 2004, Captain Mandeville "illegally" transferred Plaintiff to Facility C of

8   the SVSP from Facility B "in order to set up the physical assault upon the Plaintiff for filing lawsuits

9   and complaints against the [CDCR] and its officials."  (Opp'n at 2; Pl.'s Decl ¶ 2.)

10        On August 6, 2004, Defendants Thomas, Baez, and Ms. Pulido "conspired to and falsely

11   accused [Plaintiff] of indecent exposure" to Ms. Pulido.  (Pl.'s Decl ¶ 3 (Ex. D).)  Ms. Pulido spread

12   this false accusation of indecent exposure among the inmates in the building, including another

13   fellow inmate named Chava, in order to have Plaintiff "physically assaulted by other inmates so that

14   the other [CDCR] officials would be able to physically assault [Plaintiff] as a reprisal and for

15   retaliation for filing litigations in the courts and [administrative] appeals."  (<u>Id.</u>)  Ms. Pulido went

16   into Inmate Chava's cell and falsely informed Inmate Chava that Plaintiff had indecently exposed

17   himself to Ms. Pulido.  (Opp'n at 2.)  Ms. Pulido then ordered Inmate Chava to physically assault

18   Plaintiff.  (<u>Id.</u>)  Defendant Thomas informed Defendants Baez, Tsai, and Zamora, as well as Inmate

19   Chava, of the false accusations of indecent exposure against Plaintiff.  (Amend. to the Compl. at 1-

20   2.)  Defendant Baez then approached Plaintiff's cell and while he was standing by the cell door, he

21   falsely accused Plaintiff of indecent exposure, and threatened to physically assault Plaintiff.  (Opp'n

22   at 2; Pl.'s Decl.  ¶ 4 (Ex. D).)

23        That same day, Inmate Chava approached Plaintiff's cell door and told Plaintiff that

24   "Defendant Baez let him out to talk to [Plaintiff] about why [Plaintiff] indecently exposed [himself]

25   to the nurse (i.e., Ms. Pulido)."  (Pl.'s Decl. ¶ 5 (Ex. D).)  In response, Plaintiff stated that

26   "Defendant Baez is a liar, as well as the nurse, and that they are trying to set [him] up to be jumped

27   on because of [his] lawsuits."  (<u>Id.</u>)  Defendant Thomas then escorted Plaintiff and placed him in the

28

**United States District Court**
For the Northern District of California

1  Facility C room cage.  (Pl.'s Decl. at ¶ 6 (Ex. D); Opp'n at 2.)  Shortly thereafter, Ms. Pulido arrived

2  and falsely accused Plaintiff of indecent exposure.  (Id.)  While still in the presence of Defendant

3  Thomas, she also threatened Plaintiff with physical injury.  (Id.)  Meanwhile, Plaintiff continually

4  denied the indecent exposure accusation and informed Defendant Thomas and Ms. Pulido that he

5  was aware of "the conspiracy of reprisals and retaliations" against Plaintiff for filing lawsuits.

6  (Opp'n at 2.)  Defendant Thomas then escorted Plaintiff back to his cell.  (Id.)

7        On August 8, 2004, at approximately 11:06 AM, Defendants Baez and Tsai ordered

8  Defendant Zamora to open Plaintiff's cell door and ordered inmate Chava to run inside and to

9  physically assault Plaintiff.  (Opp'n at 2-3; Pl.'s Decl. ¶ 8 (Ex. D).)  Inmate Chava ran inside

10  Plaintiff's cell and struck Plaintiff "in the head one time."[5]  (Opp'n at 3; Pl.'s Decl. ¶ 8 (Ex. D).)

11  Inmate Chava then "backed up to [Plaintiff's] cellroom door" while Defendant Baez approached

12  them and told them to get down.  (Pl.'s Decl. ¶ 8 (Ex. D).)  Inmate Chava "got down on the floor"

13  outside Plaintiff's cell, and Plaintiff "got down on the floor" inside his cell.  (Id.)  As Plaintiff was

14  "lying on the floor proned out, Defendant Baez unnecessarily sprayed [Plaintiff] with pepper spray

15  in [his] face, neck and head and Defendant Baez hollered, 'Get down.'"  (Id.)  Plaintiff "hollered

16  [back] to Defendant Baez, 'I am down.'"  (Id.)  Defendant Baez "sprayed [the] back of [Plaintiff's]

17  neck and head with pepper spray again and hollered, 'I said get down.'"  (Id.)  Plaintiff responded, "I

18  am down."  (Id.)  Defendant Baez sprayed Plaintiff's head and the back of his neck for the third time

19  and said, "I said get down."  (Id.)  Plaintiff again responded, "I am down."  (Id.)  Defendant Baez

20  sprayed pepper spray on Plaintiff for the fourth time while the verbal interplay was repeated.  (Id.)

21  Plaintiff began suffocating and crawled out of the cell room onto the tier floor while coughing hard

22  and gasping for breath.  (Id.)  Defendant Baez then kicked Plaintiff in the back and on the side of his

23  stomach and proceeded to tightly handcuff Plaintiff's wrists.  (Id.)  Defendant Baez "picked

24  [Plaintiff] up from the floor by the handcuffed wrists," and slammed Plaintiff's body and face very

25  hard against the wall.  (Id.)  Defendant Baez then "repeatedly struck [Plaintiff] in the left side of

26

27        [5]  Plaintiff maintains that Inmate Chava never struck him in the jaw.  (Pl.'s Decl. ¶ 4 (Ex. E).)

28

**United States District Court**
For the Northern District of California

1  [his] face cheek and jaw" and pulled Plaintiff "down the stairs to[ward] the other officers who were

2  awaiting to escort [Plaintiff] out of the building." (<u>Id.</u>)

3       As a result of Defendant Baez's actions, Plaintiff suffered a fracture in his cheek bone, a

4  sprain in his left wrist, and damages to his nose and tooth. (Opp'n at 3.)  Plaintiff alleges that

5  Defendants Tsai and Zamora failed to intervene to help him while Defendant Baez was physically

6  assaulting him. (<u>Id.</u>)

7       Inmate Steve Agin's declaration corroborates Plaintiff's description of the incident.  Inmate

8  Agin states that, he was returning to his cell from the C-facility and while waiting for his cell door to

9  be unlocked, he witnessed Defendant Baez directing Defendant Zamora to open a neighboring cell

10 door -- Plaintiff's cell. (Agin Decl. at 1.)  He then saw Inmate Chava running into Plaintiff's now

11 open cell door and striking Plaintiff in the face and head with his fists. (<u>Id.</u>)  Afterwards, Defendant

12 Baez and another correctional officer whom Inmate Agin could not identify, ran up the stairs. (<u>Id.</u>)

13 Inmate Chava was ordered out of the cell. (<u>Id.</u>)  Both correctional officers were smiling, and

14 Defendant Baez "sprayed gas <u>many</u> times into the cell." (<u>Id.</u> (emphasis in the original).)  Plaintiff

15 crawled out, choking, and Defendant Baez "kicked and stomped [Plaintiff's] back and handcuffed

16 him." (<u>Id.</u>)  Defendant Baez then "pulled [Plaintiff] up to his feet and smacked him against the wall,

17 face first" and then "struck [Plaintiff] in the face." (<u>Id.</u>)  Defendant Baez dragged Plaintiff down the

18 stairs and ordered Inmate Agin to go back into his cell. (<u>Id.</u>)

19       A few minutes after the incident, Plaintiff informed one of the nurses, Defendant Arroyo that

20 he had been assaulted and that he was experiencing pain to his jaw, wrist, neck, and back. (Compl.

21 at 3; Pl.'s Decl. ¶ 12 (Ex. D).)  However, Defendant Arroyo failed to document Plaintiff's injuries

22 and failed to refer Plaintiff to a physician or to emergency treatment and care. (Compl. at 3; Pl.'s

23 Decl. ¶ 12 (Ex. D).)

24       Later that day, at 5:50 PM, Plaintiff showed another nurse, Defendant Vogel-Pace, his

25 swollen jaw and complained that he was experiencing pain. (Compl. at 3; Pl.'s Decl. ¶ 12 (Ex. D).)

26 Defendant Vogel-Pace informed Plaintiff that he would be referred to a physician, who would be

27 called to examine him; however, Defendant Vogel-Pace failed to do so. (Compl. at 3; Pl.'s Decl.

28

United States District Court
For the Northern District of California

1   ¶ 12 (Ex. D).)

2          On August 11, 2004, Plaintiff informed yet another nurse, Defendant Matthews, that he had

3   been assaulted a few days earlier, that he needed treatment for his injuries, and that he "felt

4   suicidal."  (Compl. at 3-4; Pl.'s Decl. ¶ 12 (Ex. D).)  Defendant Matthews wrote a medical report on

5   Plaintiff's injuries but failed to refer Plaintiff to a physician or to emergency treatment and care.

6   (Compl. at 3-4; Pl.'s Decl. ¶ 12 (Ex. D).)

7          Ten days after the incident, Defendant Vogel-Pace wrote a medical report regarding

8   Plaintiff's injuries but again failed to refer him for further medical care.  (Compl. at 4.)  For a period

9   of thirty days, from August 8, 2004 to September 7, 2004, despite being notified of Plaintiff's

10  injuries, Defendants Arroyo, Vogel-Pace, and Matthews "failed to refer [Plaintiff] to a physician,"

11  "failed to provide medical treatment and care to Plaintiff," and "failed to refer [Plaintiff] for

12  emergency medical treatment and care when [he] notified them and showed them that [he] was

13  suffering from a physical assault and had physical damages."  (Id.)

14         Plaintiff then notified three physicians, Defendants Pistone, Gibbs, and Grillo, about the

15  physical assault and showed them his swollen cheek and wrist.  (Opp'n at 3; Pl.'s Decl. ¶ 13 (Ex. D).)

16  However, Defendants Pistone, Gibbs, and Grillo failed to provide medical treatment from August 8,

17  2004 to September 7, 2004.  (Compl. at 4.)  They also ignored Plaintiff's physical injuries and failed

18  to administer medical treatment and care for the injuries.  (Opp'n at 3; Pl.'s Decl. ¶ 13 (Ex. D).)

19         Plaintiff alleges that Defendants Pistone, Gibbs, Matthews, Arroyo, Vogel-Pace, and Grillo

20  "conspired with Defendants Baez, Tsai, Zamora, Thomas, and Pulido to cover up the physical assault

21  upon [Plaintiff] by Inmate Chava and [Defendant] Baez."  (Opp'n at 3; Pl.'s Decl. ¶ 13 (Ex. D).)

22         In Plaintiff's opposition, he claims that after "83 days of delayed medical treatment and care,

23  Dr. Grillo [had Plaintiff's] swollen cheek x-rayed and examined and it was discovered that [Plaintiff]

24  has a cheek and jaw fracture.'"[6]  (Opp'n at 3-4.)  Plaintiff's wrist was also x-rayed and examined and

25  _____

26         [6] Plaintiff's allegation in his opposition of an eighty-three-day delay is not supported by the
    record.  Moreover, this allegation does not comport with his complaint, in which he alleges a thirty-
27  day delay to provide treatment after the August 8, 2004 incident.  The Court notes that the record
    shows that the x-ray result revealing the jaw fracture was dated September 7, 2004, which is
28  approximately thirty days after the incident.  Therefore, in its analysis, the Court will focus on

United States District Court
For the Northern District of California

the results showed that Plaintiff's wrist was sprained.  (Id. at 4.)  Additional x-rays and examinations showed that Plaintiff's tooth filling was "jarred loose and broken," and that he had a nose injury. (Id.)

Plaintiff filed various administrative grievances regarding the false indecent exposure accusation, the physical assault, and the deliberate indifference to his medical needs.  (Id.)

### 2.   **Defendants' Version**

On August 8, 2004, Defendant Tsai conducted the shower program along with Defendant Baez.  (Tsai Decl. ¶ 3.)  Defendant Baez instructed Defendant Zamora, who was the control booth officer at that time, to open Plaintiff's and Inmate Chava's cells for their medical shower.  (Baez Decl. ¶ 5; Zamora Decl. ¶ 5; Incident Report at 10, 12, 14.)  Defendants Baez and Tsai observed Plaintiff walking toward Inmate Chava.  (Baez Decl. ¶ 5; Incident Report at 10, 12.)  They then saw Plaintiff and Inmate Chava talking to each other, but did not hear what they were talking about. (Baez Decl. ¶ 5; Incident Report at 10, 12.)  Defendants Baez, Tsai, and Zamora then noticed the two inmates striking each other "in the face and torso with their fists."  (Baez Decl. ¶ 5; Zamora Decl. ¶ 5; Incident Report at 10, 12, 14.)  Defendant Baez ordered them to stop fighting, activated the alarm, and approached them while drawing his pepper spray.  (Baez Decl. ¶ 5; Zamora Decl. ¶ 5; Incident Report at 11, 12, 15.)  Defendant Baez again ordered them to stop fighting.[7]  (Baez Decl. ¶ 5; Incident Report at 11.)  Inmate Chava complied, but Plaintiff did not.  (Baez Decl. ¶ 5; Zamora Decl. ¶ 5; Incident Report at 11, 12, 15.)  Defendant Baez sprayed Plaintiff in the face with pepper spray, and instructed Plaintiff "to prone out."  (Incident Report at 11, 13.)  Plaintiff immediately stopped fighting and complied with Defendant Baez's order.  (Id. at 11, 13; Baez Decl. ¶ 5; Zamora Decl. ¶ 5.)

Sergeant Segoviano, in response to an audible alarm coming from C8, proceeded into the C-

---

Plaintiff's original allegation that Defendants Pistone, Gibbs, and Grillo were deliberately indifferent to his serious medical needs based on a thirty-day delay in providing treatment.

[7]  Defendant Baez alleges in his declaration and in the incident report he has written that he gave more than one verbal order for Plaintiff to stop fighting.  (Baez Decl. ¶ 5)  However, Defendants Tsai and Zamora noted in their declarations that Defendant Baez only ordered Plaintiff and Inmate Chava to stop fighting once.  (Tsai Decl. ¶ 5; Zamora Decl. ¶ 5; Incident Report at 12 .)

United States District Court
For the Northern District of California

1  pod and noticed Plaintiff and Inmate Chava were both in handcuffs and were "laying in a prone

2  position on their stomachs on the top tier." (Incident Report at 6.)  In accordance with Sergeant

3  Segoviano's orders, Officers Gomez and Benefield proceeded to escort Plaintiff to a holding cell for

4  decontamination.  (Id.)

5       Defendant Baez maintains that he did not kick or strike Plaintiff on any part of his body.

6  (Baez Decl. ¶ 6.)  Defendant Baez further asserts that he did not handcuff Plaintiff or pick him up by

7  his handcuffs or slam him into a wall.  Defendant Baez further claims that he did not escort Plaintiff,

8  once handcuffed, from one place to another.  (Id.)  Lastly, Defendant Baez claims that he did not

9  observe any injuries on Plaintiff on the day of the incident.  (Id.)

10      Defendants Tsai and Zamora corroborate Defendant Baez's version of the incident.

11 Defendant Tsai states that he did not induce Inmate Chava to physically assault Plaintiff.  (Tsai

12 Decl. ¶ 8.)  Defendants Tsai and Zamora declare that they did not observe Defendant Baez kick or

13 strike Plaintiff that day.  (Id. ¶ 6; Zamora Decl. ¶ 6.)  Nor did they observe Defendant Baez place

14 handcuffs on Plaintiff, pick him up by his handcuffed hands, or slam him into a wall.  (Id.)

15 Defendants Tsai and Zamora  also claim they did not notice any injuries on Plaintiff that day.  (Tsai

16 Decl. ¶ 7; Zamora Decl. ¶ 7.)

17      According to Defendant Gibbs, who is a licensed physician currently employed at SVSP, "if

18 an inmate wants medical treatment, he may complete a Health Care Service Request Form to request

19 medical treatment (CDCR Form No. 7362).[8]  (Gibbs Decl. ¶ 9.)

20      There were three medical reports of injury or unusual occurrence (injury reports) regarding

21 Plaintiff's injuries following the August 8, 2004 incident.  (Maiorino Decl., Ex. A at 122-124.)  In

22 the first one, completed by Defendant Arroyo on the date of the incident, there were no injuries

23 noted, and no registered nurse or physician was notified.  (Id. at 124.)  In the second injury report,

24 dated August 11, 2004, Defendant Matthews reported a swollen area on Plaintiff's left hand.  (Id. at

25 _____

26      [8]  As mentioned above, Defendants have attached a declaration by PBSP Chief Medical
    Officer Sayre which includes the procedure followed at PBSP when an inmate is injured or involved
27 in an unusual incident; however, the medical examinations and reports relevant to the August 8,
    2004 incident were done by SVSP medical employees.  Hence, Dr. Sayre's declaration is irrelevant
28 to Plaintiff's deliberate indifference claim stemming from that incident.

123.)  This report indicates that, although a registered nurse was notified, no physician was informed about Plaintiff's injury.  (Id.)  There were no injuries noted in the third injury report, completed by Defendant Vogel-Pace on August 17, 2004; consequently, there were no referrals made to a registered nurse or a physician.  (Id. at 122.)

Defendant Pistone first became aware that Plaintiff requested medical treatment on August 28, 2004, when he conducted a personal examination of Plaintiff at SVSP.  (Pistone Decl. ¶¶ 7-8.) At that time, Plaintiff allegedly claimed that "he had been hit in the left cheek by Licensed Vocational Nurse Matthews on August 8, 2004," and complained of pain in his left cheek.[9]  (Pistone Decl. ¶ 8.)  Defendant Pistone did not notice any redness or swelling in Plaintiff's left cheek, and noted that Plaintiff "was able to open and close his mouth normally."  (Id.)  Defendant Pistone also observed that Plaintiff's vital signs were normal, that Plaintiff's temporal and mandible joints were within normal limits, and that there was no indication that Plaintiff suffered nerve damage.  (Id.) Thus, Defendant Pistone concluded that "there was no reason to believe that Plaintiff suffered from a fracture."  Defendant Pistone prescribed Ibuprofen and Flexural for Plaintiff's pain, and ordered x-rays of Plaintiff's facial bones and left temporomandibular joint.  (Id.; Maiorino Decl., Ex. A at 153.) The x-ray result dated September 7, 2004 revealed that Plaintiff had a "nondisplaced, depressed left zygomatic arch fracture."  (Pistone Decl. ¶ 9; Maiorino Decl., Ex. A at 101.)

Defendant Pistone conducted another medical examination of Plaintiff on September 13, 2004.  Defendant Pistone made similar observations in his subsequent examination, finding that there was no redness or swelling in Plaintiff's left cheek, that Plaintiff was able to open and close his mouth normally, that Plaintiff's vital signs were normal, that Plaintiff's temporal and mandible joints were within normal limits, and that there was no indication that Plaintiff suffered nerve damage. (Pistone Decl. ¶ 10.)  Defendant Pistone again prescribed Ibuprofen and Flexural for Plaintiff, and referred him to an orthopedic specialist.  (Id.; Maiorino Decl., Ex. A at 50.)  Defendant Pistone maintains that "no further medical treatment was required for Plaintiff's left cheek, and that his

---

[9]  The Court notes that Plaintiff does not allege that he was hit by Defendant Matthews on August 8, 2004; therefore, there is no pending excessive force claim against Defendant Matthews.

15

United States District Court
For the Northern District of California

1   condition was of the type "that would heal normally over a relatively short period of time." (Pistone

2   Decl. ¶ 11.)  Thus, Defendant Pistone claims that the only appropriate medical treatment for Plaintiff

3   was the pain medication prescribed for him.  (Id.)  Furthermore, Defendant Pistone claims, based on

4   his nearly fifty years of experience as a physician and his examination of Plaintiff, that there was

5   nothing further he could have done for Plaintiff's medical condition, in addition to examining

6   Plaintiff twice, ordering x-rays of his face, prescribing him pain relief medication, and referring him

7   to an orthopedic specialist.  (Pistone Decl. ¶ 12.)  Meanwhile, Defendant Gibbs alleges that he was

8   not aware of Plaintiff's multiple requests for medical treatment until November 2, 2004.  (Gibbs

9   Decl. ¶¶ 9-10.)  Defendant Gibbs claims that his lack of awareness was due to the fact that he did not

10   process Plaintiff's four requests for medical treatment.  (Id. ¶ 9.)

11       **D.**    **Excessive Force Claim**

12           **1.**    **Applicable Law**

13         A prisoner has the right to be free from cruel and unusual punishment, including physical

14   abuse by guards.  Whenever prison officials stand accused of using excessive physical force in

15   violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-

16   faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson

17   v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 317 (1986)).  In

18   determining whether the use of force was for the purpose of maintaining or restoring discipline, or

19   for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application

20   of force, the relationship between that need and the amount of force used, the extent of any injury

21   inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper

22   the severity of a forceful response.  See Hudson, 503 U.S. at 7; see also Spain v. Procunier, 600 F.2d

23   189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).  If the

24   force officers use is so disproportionate to that required that it suggests deliberate sadism, the use of

25   force violates the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 322 (1986); Madrid v.

26   Gomez, 889 F. Supp. 1146, 1172 (N.D. Cal. 1995) (finding that although cell extractions are "an

27   essential tool in maintaining security in any prison," pattern of unnecessary extractions and massive

28

United States District Court
For the Northern District of California

1    force employed violated Eighth Amendment).

2        Still, not every criticism of an officer's conduct suggests excessive force.  Whitley, 475 U.S.

3    at 322.  The Eighth Amendment does not prohibit uses of force that appear unreasonable in

4    hindsight, so long as the officers were acting in good faith and for a legitimate end.  Id.; compare

5    Clement v. Gomez, 298 F.3d 898, 903-04 (9th Cir. 2002) (applying Eighth Amendment "malicious

6    and sadistic" standard to prison pepper spray incident) with Headwaters Forest Defense v. County of

7    Humboldt, 240 F.3d 1185, 1198-1206 (9th Cir. 2001), vacated on other grounds by, Saucier v. Katz,

8    533 U.S. 194 (2001) (applying Fourth Amendment "objectively reasonable" excessive force

9    standard to police use of pepper spray).  In order for an Eighth Amendment excessive force case to

10   go to the jury, the evidence must go "beyond a mere dispute over the reasonableness of a particular

11   use of force or the existence of arguably superior alternatives"  to support "a reliable inference of

12   wantonness in the infliction of pain."  Whitley, 475 U.S. at 322.

13       While the extent of injury suffered by an inmate is one of the factors to be considered in

14   determining whether the use of force is wanton and unnecessary, the absence of serious injury does

15   not end the Eighth Amendment inquiry.  Id.  Whether the alleged wrongdoing is objectively

16   "harmful enough" to establish a constitutional violation is contextual and responsive to

17   contemporary standards of decency.  Id. at 8 (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

18   Such standards are always violated when prison officials maliciously and sadistically use force to

19   cause harm, whether or not significant injury is evident.  Id.; see also Schwenk v. Hartford, 204 F.3d

20   1187, 1196 (9th Cir. 2000) (no lasting injury required for sexual assault because sexual assault was

21   deeply offensive to human dignity); Felix v. McCarthy, 939 F.2d 699, 701-02 (9th Cir. 1991) (it is

22   not degree of injury which makes out violation of Eighth Amendment but use of official force or

23   authority that is intentional, unjustified, brutal and offensive to human dignity).

24       That is not to say that every malevolent touch by a prison guard gives rise to a federal cause

25   of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes

26   from constitutional recognition de minimis uses of physical force.  Hudson, 503 U.S. at 9-10 (blows

27   directed at inmate which caused bruises, swelling, loosened teeth and cracked dental plate were not

28

17

1   de minimis).

2          **2.    Analysis**

3          As evident in the "Factual Background" section above, the parties' versions of the incident

4   differ markedly.

5          In his verified complaint and opposition, Plaintiff sets forth specific allegations regarding the

6   conduct of Defendant Baez on the date of the incident and, thus, creates a genuine issue of material

7   fact that the alleged force was applied maliciously and sadistically to cause harm.  See Hudson, 503

8   U.S. at 6-7.  Plaintiff alleges that after his cell room door was opened and Inmate Chava had run

9   inside his cell and struck him in the head, Defendant Baez approached them and ordered them to get

10  down.  According to Plaintiff, he got down on the floor inside his cell but Defendant Baez

11  unnecessarily sprayed him with pepper spray four separate times while ordering him get down.  In

12  addition, Plaintiff maintains that, after he crawled out of his cell room floor, Defendant Baez kicked

13  him, tightly handcuffed his wrists, picked him up from the floor by his handcuffed wrists, slammed

14  his body and face hard against the wall, and repeatedly struck him on the left side of his face.

15  Plaintiff's version of Defendant Baez's unprovoked use of force while Plaintiff was being compliant

16  would lead to a conclusion that the force used by Defendant Baez was excessive.  Furthermore, as

17  mentioned above, Inmate Agin's declaration corroborates Plaintiff's version of the incident.

18         Meanwhile, if believed, Defendants' version that Defendant Baez was using force necessary

19  to subdue Plaintiff, who was engaged in a mutual combat with a fellow inmate and refused to follow

20  orders that he stop fighting, would lead to a conclusion that the force used was not excessive.  The

21  Court will not be able to grant judgment in Defendant Baez's favor without accepting his version and

22  rejecting Plaintiff's version of the events that transpired.  Summary judgment is not the place for

23  credibility determinations.  A trier of fact must hear both versions and decide whom to believe.

24  Plaintiff has established a "genuine issue for trial" regarding his excessive force claim Defendant

25  Baez.  Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

26         It is undisputed that Defendants Tsai and Zamora were present at the time of the August 8,

27  2004 incident.  Indeed, both state that they witnessed Defendant Baez spraying Plaintiff with pepper

28

18

United States District Court
For the Northern District of California

1  spray.  Because Plaintiff has set forth a material dispute of fact regarding the amount of force

2  Defendant Baez used against him on the date of the incident, Plaintiff has consequently established a

3  "genuine issue for trial" regarding his claim against Defendants Tsai and Zamora for failing to

4  intervene to prevent the alleged use of excessive force.  <u>Celotex</u>, 477 U.S. at 324 (quoting Fed. R.

5  Civ. P. 56(e)).  Accordingly, Defendants Baez, Tsai, and Zamora are not entitled to summary

6  judgment as a matter of law.

7       Viewing the evidence in the light most favorable to Plaintiff, the Court also finds that a

8  genuine issue of material fact remains with regard to Plaintiff's claim against Defendant Thomas for

9  his failure to intervene.  The record shows that Defendant Thomas was not present at the time of the

10  August 8, 2004 incident.  However, Plaintiff alleges that Defendant Thomas was one of the SVSP

11  correctional officers who conspired to falsely accuse Plaintiff of indecent exposure to Ms. Pulido.

12  (Opp'n at 1.)  Plaintiff claims that Defendant Thomas informed Defendants Baez, Tsai, and Zamora,

13  as well as Inmate Chava, of the false accusations against Plaintiff, and that Defendant Thomas

14  "knew or should have known, in the performance of his official duties as Sergeant of the [CDCR],"

15  that his actions of "informing others of false accusations against the plaintiff and to assault him, to

16  incite and coerce animosity against Plaintiff, and to return the plaintiff to the prison cell, would and

17  did cause Defendants Baez, Tsai, Zamora and inmate Chava to physically assault the plaintiff with

18  excessive force against the Eighth Amendment . . . ."  (Amend. to the Compl. at 1-2.)

19       Moreover, Plaintiff maintains that the assault could have been prevented had Defendant

20  Thomas placed Plaintiff in administrative segregation.  (Opp'n at 8.)  On the other hand, Defendant

21  Thomas claims that he had never made false accusations against Plaintiff nor had he informed

22  Defendants Baez, Baez, Tsai, Zamora, and Inmate Chava of the false accusations against Plaintiff.

23  Plaintiff's version of the facts would lead to a conclusion that Defendant Thomas violated Plaintiff's

24  constitutional rights by conspiring with the other Defendants to falsely accuse Plaintiff of indecent

25  exposure to Ms. Pulido, and by failing to intervene to prevent Defendant Baez's excessive use of

26  force against Plaintiff in furtherance of the conspiracy.  Meanwhile, if believed, Defendant Thomas's

27  statements would lead to the conclusion that Defendant Thomas could not have known of the

28  imminent assault on Plaintiff and therefore had no opportunity to intervene to prevent it.  The Court

1   will not be able to grant judgment in Defendant Thomas's favor without accepting his version and

2   rejecting Plaintiff's version of the events that transpired.  As mentioned above, summary judgment is

3   not the place for credibility determinations.  Thus, Plaintiff has established a "genuine issue for trial"

4   against Defendant Thomas for his failure to intervene.  Celotex, 477 U.S. at 324 (quoting Fed. R.

5   Civ. P. 56(e)).  Therefore, Defendant Thomas is not entitled to summary judgment as a matter of

6   law.

7       Accordingly, the Court DENIES Defendants' motion for summary judgment as to Plaintiff's

8   excessive force claim.

9       **E.    Deliberate Indifference Claim**

10      Plaintiff claims that Defendant SVSP physicians Pistone, Gibbs, and Grillo failed to provide

11  timely medical treatment for Plaintiff's injuries stemming from the August 8, 2004 incident.

12  Plaintiff alleges that Defendants Pistone, Gibbs, and Grillo knew or should have known to treat him

13  sooner than thirty days after the incident because the nurses (Defendants Arroyo, Vogel-Pace, and

14  Matthews) who were working for them were aware of Plaintiff's need for medical treatment as early

15  as the date of the incident.

16      **1.    Applicable Law**

17      Deliberate indifference to serious medical needs violates the Eighth Amendment's

18  proscription against cruel and unusual punishment.  See Estelle, 429 U.S. at 104; McGuckin v.

19  Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc.

20  v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th

21  Cir. 1986).  A determination of "deliberate indifference" involves an examination of two elements:

22  the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.

23  See McGuckin, 974 F.2d at 1059.

24      A "serious" medical need exists if the failure to treat a prisoner's condition could result in

25  further significant injury or the "unnecessary and wanton infliction of pain."  Id. (citing Estelle, 429

26  U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and

27  worthy of comment or treatment; the presence of a medical condition that significantly affects an

28  individual's daily activities; or the existence of chronic and substantial pain are examples of

United States District Court
For the Northern District of California

20

**United States District Court**
For the Northern District of California

1  indications that a prisoner has a "serious" need for medical treatment.  Id. at 1059-60 (citing Wood

2  v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

3       A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk

4  of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v.

5  Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which

6  the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw

7  the inference."  Id.  If a prison official should have been aware of the risk, but was not, then the

8  official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of

9  Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).  In order for deliberate indifference to be established,

10  therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting

11  harm.  See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d

12  404, 407 (9th Cir. 1985).

13       Once the prerequisites are met, it is up to the fact finder to determine whether deliberate

14  indifference was exhibited by the defendant.  A plaintiff need not prove complete failure to treat.

15  Deliberate indifference may be shown where access to medical staff is meaningless as the staff is not

16  competent and does not render competent care.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th

17  Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury,

18  disregarded evidence of complications to which they had been specifically alerted and without

19  examination prescribed contraindicated sedatives).  Such indifference may also appear when prison

20  officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way

21  in which prison officials provide medical care.  See McGuckin, 974 F.2d at 1062 (delay of seven

22  months in providing medical care during which medical condition was left virtually untreated and

23  plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim).  For

24  a delay in treatment to constitute an Eighth Amendment violation, the delay must have caused

25  substantial harm.  See Shapley, 766 F.2d at 407 (delay providing surgery in which the delay proved

26  harmful would state an Eighth Amendment claim).

27       A claim of medical malpractice or negligence is insufficient to make out a violation of the

28  Eighth Amendment.  See Toguchi v. Chung, 391 F.3d 1051, 1060-61 (9th Cir. 2004); Frost v.

1     Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998).

2

3              **2.    Analysis**

4          It is undisputed that Plaintiff suffered a fractured jaw during the August 8, 2004 incident.

5     Plaintiff also claims to have suffered additional injuries, specifically a wrist sprain, as well as nose,

6     tooth, and back injuries.  (Opp'n at 10.)  Therefore, Plaintiff has established that a "serious" medical

7     need for treatment existed based on the documented jaw fracture and his allegations of additional

8     injuries, which are corroborated to some extent by Inmate Agin's observations.  See McGuckin, 974

9     F.2d at 1059-60.

10             **a.    Defendants Pistone and Gibbs[10]**

11         The Court must now move to the second step in the deliberate indifference analysis, the

12    nature of Defendants Pistone's and Gibbs's response to Plaintiff's serious medical need for treatment.

13    The issue in dispute is whether Defendants Pistone and Gibbs should be held liable because they

14    failed to provide medical care for Plaintiff's injuries from August 8, 2004 to September 7, 2004,

15    when the x-ray results revealed a jaw fracture.  (Compl. at 4.)  Plaintiff claims Defendants Pistone

16    and Gibbs ignored Plaintiff's physical injuries and failed to administer medical treatment and care

17    for the injuries.  (Opp'n at 3; Pl.'s Decl. ¶ 13 (Ex. D).)

18          First, the Court finds Plaintiff's argument of untimely medical treatment unavailing because

19    he fails to support his allegations with "specific, nonconclusory, factual allegations" that would, if

20    proven, show bad motive.  See Jeffers v. Gomez, 267 F.3d 895, 907 (9th Cir. 2001).  Plaintiff states

21    that he notified Defendants Pistone and Gibbs of the physical assault that occurred and showed them

22    his swollen cheek and wrist but they "chose to purposely and maliciously cover up and ignore

23    [Plaintiff's] physical injuries."  (Opp'n at 3, 10, 11; Pl.'s Decl. ¶ 13 (Ex. D).)  However, Plaintiff

24    provides no evidence showing that either doctor knew of Plaintiff's need for medical treatment prior

25    to when Defendants Pistone and Gibbs claim they became aware of Plaintiff's medical needs, which

26    was on August 28, 2004 and November 2, 2004, respectively.  Even if Plaintiff had notified

27    ─────────────

28         [10]  Defendants Pistone and Gibbs have been served in this action, while Defendant Grillo has
      not; therefore, the Court will handle Plaintiff's claim against Defendant Grillo below.

United States District Court
For the Northern District of California

1   Defendants Pistone or Gibbs of his injuries, the Court finds that he has presented no evidence that

2   they were responsible for the delay in providing medical treatment.  See Walker v. Benjamin, 293

3   F.3d 1030, 1038 (7th Cir. 2002) (doctor entitled to summary judgment where plaintiff claimed he

4   did not receive antibiotics prescribed for him by defendant, but failed to produce any evidence

5   showing failure was in any way within defendant's control).  During the August 28, 2004

6   examination, Defendant Pistone observed no redness or swelling on Plaintiffs left cheek area, and

7   found that Plaintiff was able to open and close his mouth normally.  (Decl. Pistone ¶ 8.)  Based on

8   Defendant Pistone's medical opinion, there was no reason to believe that Plaintiff suffered from a

9   fracture; therefore, Ibuprofen and Flexural were prescribed for pain.  (Id.)  Nevertheless, Defendant

10  Pistone also ordered x-rays of Plaintiffs facial bones and left temporalmanibular joint.  (Id.)  The

11  record shows that the September 7, 2004 x-ray results revealed that Plaintiff's jaw was fractured.

12  (Id. ¶ 9.)

13      The Court finds that Defendant Pistone has presented competent evidence that he did not

14  have the opportunity to examine Plaintiff until twenty days after the incident, and Plaintiff has not

15  presented evidence to the contrary.  Furthermore, the record shows that when Defendant Pistone did

16  examine Plaintiff, he immediately provided pain medication and ordered x-rays.  Meanwhile,

17  Defendant Gibbs first examined Plaintiff on November 2, 2004, which is after the August 8, 2004 to

18  September 7, 2004 time period.  Therefore, Defendant Gibbs claims that during the time period at

19  issue, he was "not aware that Plaintiff had requested medical care services."  (Gibbs Decl. ¶ 8-9.)

20  Based on the record, the Court finds that Defendant Gibbs has presented competent evidence that he

21  did not have the opportunity to provide more timely medical treatment to Plaintiff during the alleged

22  time period, and Plaintiff has not presented evidence to the contrary.

23      Even if Defendants Pistone and Gibbs had the opportunity to do so and knew that there was a

24  substantial risk that Plaintiff's condition would worsen without receiving treatment for his fractured

25  jaw, a delay of one month may have amounted to negligence, but is not enough to establish

26  deliberate indifference because the record shows that the type of jaw fracture and additional injuries

27  Plaintiff sustained are ones that would heal normally over a relatively short period of time.  See

28  Frost, 152 F.3d at 1130 (alleged delays in administration of pain medication, treatment of a broken

23

**United States District Court**
For the Northern District of California

1  nose, and providing plaintiff with a replacement crutch may have amounted to negligence but were

2  not enough to establish deliberate indifference).

3        Finally, Plaintiff has failed to provide sufficient proof that the delay was attributable to a

4  "purposeful act or failure to act" on the part of Defendants Pistone and Gibbs.  See McGuckin, 974

5  F.2d at 1060.  Even if either Defendant Pistone or Defendant Gibbs was responsible for the delay in

6  providing Plaintiff with his necessary medical treatment, Plaintiff has failed to show that their delay

7  amounted to anything more than negligence in the circumstances of this case.  Id. at 1059 (mere

8  negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's

9  Eighth Amendment rights).  The delay in treatment that Plaintiff suffered does not constitute an

10  Eighth Amendment violation because the record shows that the delay did not cause substantial harm

11  in light of the fact that the type of jaw fracture and additional injuries he sustained are ones that

12  would heal normally over a relatively short period of time.  See Wood, 900 F.2d at 1335 (delay of

13  treatment of over one month was not actionable because no substantial harm resulted); cf. Shapley,

14  766 F.2d at 407 (delay of one year in providing knee surgery for inmate, resulting in serious

15  aggravation of injury and permanent impairment, may be actionable); Hunt v. Dental Department,

16  865 F.2d 198, 199 (9th Cir. 1989) (three month delay in replacing dentures, causing gum disease and

17  possibly weight loss constituted Eighth Amendment violation).  Even viewing the evidence and the

18  inferences drawn therefrom in the light most favorable to Plaintiff, no reasonable jury could return a

19  verdict for Plaintiff against either Defendant Pistone or Defendant Gibbs.  Therefore, Plaintiff has

20  failed to show that they have been deliberately indifferent to his serious medical needs.

21        Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiff's

22  deliberate indifference claim against Defendants Pistone and Gibbs.

### b.    **Defendant Grillo**

24        As noted above, to date, service of the summons and complaint has not been executed upon

25  Defendant Grillo, and he has not joined the other Defendants in their motion for summary judgment

26  and motion to dismiss.  Meanwhile, Plaintiff has failed to provide the Court with Defendant Grillo's

27  current address even after being directed to do so by the March 23, 2009 deadline.  (Feb. 25, 2009

28  Order at 5-6.)  Thus, the Court could dismiss without prejudice all claims against Defendant Grillo

United States District Court
For the Northern District of California

under Rule 4(m) because Defendant Grillo was not timely served with process, the deadline by which to do so has passed, and Plaintiff has not shown good cause to further extend the deadline for the service of this Defendant.  See Walker v. Sumner, 14 F.3d 1415, 1421-22 (9th Cir. 1994), overruled on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).  It is apparent, however, that the allegations against Defendant Grillo in the complaint are similar to those against Defendants Pistone and Gibbs.  Plaintiff alleges that "[a]fter 83 days[11] of delayed medical treatment and care, Defendant Grillo ha[d] the Plaintiff's swollen cheek x-rayed and examined, and it was discovered that the Plaintiff has a cheek and jaw fracture."  (Opp'n 3-4 (citing to Pl.'s Ex. H-1-H-3) (footnote added).)  Plaintiff's exhibit shows that Defendant Grillo signed the x-ray report, which was marked as received on September 24, 2004.  (Pl.'s Ex. H-1.)  On September 29, 2004, Defendant Grillo scheduled Plaintiff for a follow up medical appointment for his "facial bones."  (Pl.'s Ex. H-2.)  However, similar to the above analysis of Plaintiff's claims against Defendants Pistone and Gibbs, the Court finds that Plaintiff provides no evidence showing that Defendant Grillo knew of Plaintiff's need for medical treatment prior to when Defendant Grillo claims he became aware of Plaintiff's medical needs, which was September 24, 2004, when Defendant Grillo received the x-ray report.  Even if Plaintiff had notified Defendant Grillo of his injuries, the Court finds that Plaintiff has presented no evidence that Defendant Grillo was responsible for the delay in providing medical treatment.  See Walker, 293 F.3d at 1038.  There is no suggestion in the complaint, the exhibits attached thereto, or in the briefs and exhibits filed in connection with the present motions, that the analysis differs with respect to Defendant Grillo as opposed to Defendants Pistone and Gibbs.  Therefore, in lieu of dismissal under Rule 4(m), the Court will consider whether Defendant Grillo is entitled to summary judgment.

Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) Plaintiff has been provided an opportunity to address the controlling issues.

---

[11]  As mentioned above, Plaintiff's allegation in his opposition of an eighty-three-day delay is not supported by the record; therefore, the Court will focus on Plaintiff's original allegation that Defendant Grillo was deliberately indifferent to his serious medical needs based on a thirty-day delay in providing treatment.

United States District Court
For the Northern District of California

Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802-03 (9th Cir.), cert. denied, 516 U.S. 864 (1995) (citing, inter alia, Silverton v. Department of the Treasury, 644 F.2d 1341, 1345 (9th Cir 1981)).  Such is the case here because the controlling issues as to Defendants Pistone and Gibbs are the same as to Defendant Grillo.  Plaintiff has presented no evidence that Defendant Grillo was responsible for the one-month delay in providing Plaintiff with the medical treatment he needed. The record shows that Dr. Grillo's involvement in Plaintiff's medical treatment --  receiving the x-ray report showing the fracture on September 24, 2004, and then ordering follow up treatment for Plaintiff's "facial bones" on September 29, 2004 -- occurred after the August 8, 2004 to September 7, 2004 time period.  Even if Defendant Grillo were responsible for this one-month delay, Plaintiff has failed to show that the delay amounted to deliberate indifference in the circumstances of this case. As mentioned above, the delay in treatment that Plaintiff suffered would constitute an Eighth Amendment violation only if the delay caused substantial harm.  See Shapley, 766 F.2d 404 at 407. Such harm was not present here because the type of jaw fracture and additional injuries Plaintiff sustained are ones that would heal normally over a relatively short period of time.  See Wood, 900 F.2d at 1335.  At most, a delay of one month could have only amounted to negligence.  See Frost, 152 F.3d at 1130.  Therefore, Plaintiff cannot prevail on his claim against Defendant Grillo. Accordingly, Defendant Grillo is also entitled to summary judgment as a matter of law as to Plaintiff's deliberate indifference claim against him.

**II.   Motion to Dismiss**

      **A.   Failure to Exhaust Administrative Remedies**

      In the alternative, Defendants assert that Plaintiff's claims against Defendants Zamora, Thomas, Tsai, Pistone, and Gibbs should be dismissed because Plaintiff failed to exhaust his administrative remedies against them.  In support of their alternative motion to dismiss, Defendants have submitted a declaration by N. Grannis, Chief of the Inmate Appeals Branch, (docket no. 59). Attached to Chief Grannis's declaration is a copy of the printout of the search result of Plaintiff's computerized records in the Inmate Appeals Branch.  (Grannis Decl., Ex. A.)  Also attached to Chief Grannis's declaration are copies of the appeals decisions at the Director's level regarding Plaintiff's

26

United States District Court
For the Northern District of California

1    three administrative appeals stemming from the August 8, 2004 incident.  (Grannis Decl., Ex. B, C,

2    D.)  Chief Grannis states that the submitted exhibits are accurate copies of what they purport to be.

3    (Grannis Decl. ¶¶ 4, 8-9, 11.)

4    **1.    Applicable Law**

5         The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996)

6    (PLRA), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to

7    prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any

8    jail, prison, or other correctional facility until such administrative remedies as are available are

9    exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is mandatory and no longer left to the discretion of

10   the district court.  Woodford v. Ngo, 548 U.S. 81, 84 (2006) (citing Booth v. Churner, 532 U.S. 731,

11   739 (2001)).  "Prisoners must now exhaust all 'available' remedies, not just those that meet federal

12   standards." Id.  Even when the relief sought cannot be granted by the administrative process, i.e.,

13   monetary damages, a prisoner must still exhaust administrative remedies.  Id. at 85-86 (citing Booth,

14   532 U.S. at 734).

15        "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted'

16   to mean what the term means in administrative law, where exhaustion means proper exhaustion."

17   Id. at 2387.  Therefore, the PLRA's exhaustion requirement requires "proper exhaustion" of

18   available administrative remedies.  Id.  "Proper exhaustion demands compliance with an agency's

19   deadlines and other critical procedural rules because no adjudicative system can function effectively

20   without imposing some orderly structure on the course of its proceedings." Id. at 2386 (footnote

21   omitted).  In other words, the PLRA's exhaustion requirement cannot be satisfied "by filing an

22   untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 2382.

23   Furthermore, administrative remedies may not be exhausted where the grievance, liberally

24   construed, does not have the same subject and same request for relief.  See generally O'Guinn v.

25   Lovelock Correctional Center, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (even with liberal

26   construction, grievance requesting a lower bunk due to poor balance resulting from a previous brain

27   injury was not equivalent to, and therefore did not exhaust administrative remedies for, claims of

28

27

**United States District Court**
For the Northern District of California

denial of mental health treatment in violation of the ADA and Rehabilitation Act).

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. See id. § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDCR. Id. § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). Id. at 1237-38. A prisoner need not proceed further and also exhaust state judicial remedies. Jenkins v. Morton, 148 F.3d 257, 259-60 (3d Cir. 1998).

Administrative remedies may not be exhausted where the grievance, liberally construed, does not have the same subject and same request for relief. See generally O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1063 (9th Cir. 2007) (even with liberal construction, grievance requesting a lower bunk due to poor balance resulting from a previous brain injury was not equivalent to, and therefore did not exhaust administrative remedies for, claims of denial of mental health treatment in violation of the ADA and Rehabilitation Act).

Nonexhaustion under § 1997e(a) is an affirmative defense. Jones v. Bock, 549 U.S. 199, 217-18 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. Jones, 549 U.S. at 215-17.

###           2.           Analysis

Although Plaintiff filed three appeals stemming from the August 8, 2004 incident, Defendants allege that Plaintiff failed to include his failing to intervene claim against Defendants Tsai, Zamora, and Thomas. (Mot. for Summ. J. at 14.) Meanwhile, Plaintiff maintains that he had

1   properly exhausted his excessive force claim against Defendants Tsai, Zamora, and Thomas.  (Opp'n

2   at 11.)  Defendants cited administrative appeals SVSP 04-03008, SVSP 04-03034, and SVSP 04-

3   4156 in support of their argument while Plaintiff cites the SVSP 04-03008 appeal in support of his

4   claim.  (Mot. at Summ. J. at 14; Grannis Decl., Ex. B, C, D;[12] Opp'n, Ex. N.)  This administrative

5   appeals record indicates that Plaintiff states the following in his initial appeal:

6           On 8-8-04 at 11:35 am c/o L. Baez and c/o Tsai told c/o L. Zamora to open up the cell
        227 and allowed Chava to rush in and hit me and we both began fighting until Baez
7           told Chava to come out and then began repeatedly macing [Plaintiff] in [his] face and
        back of [his] neck and head until [Plaintiff] crawled out.  Then Baez began kicking
8           [Plaintiff's] back, handcuffed [Plaintiff] and then . . . [illegible]. . . and began
        punching [Plaintiff's] face.

9   (Grannis Decl., Ex. B.)

10          Liberally construed, Plaintiff's statements indicate that he discussed the same subject, and

11  sought the same relief, in his initial administrative appeal SVSP 04-03008 and in the instant federal

12  civil rights complaint.  See O'Guinn, 502 F.3d at 1063.  Both the administrative appeal and present

13  federal complaint referred to the false accusation of indecent exposure that allegedly occurred on

14  August 6, 2004, and the alleged excessive use of force by Defendant Baez against Plaintiff on

15  August 8, 2004.  In the administrative appeal, Plaintiff had not specifically mentioned that

16  Defendants Tsai and Zamora failed to intervene as Defendant Baez was using excessive force

17  against him, while this allegation was explicitly stated in the federal complaint.  However, Plaintiff

18  indicated in the administrative appeal that Defendants Tsai and Zamora were there at the time of the

19  incident.  Moreover, nowhere did Plaintiff mention in the appeals form that Defendant Tsai or

20  Zamora left before Defendant Baez physically assaulted him.  Thus, it can be reasonably inferred

21  from Plaintiff's statements that Defendants Tsai and Zamora were present at the time of the

22  excessive force incident, and that they failed to intervene to prevent Defendant Baez from physically

23  assaulting Plaintiff.

24          However, this inference cannot be applied to Plaintiff's claim against Defendant Thomas.

25  Nowhere in Plaintiff's administrative appeal did he mention Defendant Thomas, or allege that

26

27          [12]  Defendants erroneously cited to Exhibit B in Deputy Attorney General Maiorino's
    Declaration in support of their non-exhaustion argument.  They should have instead cited to Exhibit
28  B in Chief Grannis's Declaration.

United States District Court
For the Northern District of California

1    Defendant Thomas was present at the time of the August 8, 2004 incident.  Indeed, the parties

2    concede that Defendant Thomas was not present when Defendant Baez punched, struck, and kicked

3    Plaintiff.  In the federal complaint, Plaintiff claims that Defendant Thomas conspired with the other

4    correctional officers to falsely accuse Plaintiff of indecent exposure, and that Defendant Thomas

5    should have known that his action would result in a physical assault on Plaintiff.  However,

6    Defendant Thomas's involvement in this conspiracy was not mentioned in the administrative appeal

7    SVSP 04-03008.  Neither was Defendant Thomas's involvement mentioned in Plaintiff's other

8    administrative appeals relating to the August 8, 2004 incident, SVSP 04-03034 and SVSP 04-4156.

9    Plaintiff's claim against Defendant Thomas is therefore unexhausted under the PLRA and will be

10   DISMISSED without prejudice.

11       Having granted summary judgment as to Plaintiff's deliberate indifference claim against

12   Defendants Pistone, Gibbs, and Grillo, the Court need not address whether this claim was properly

13   exhausted under PLRA.

14       **B.**       **Failure to Comply with the California Tort Claims Act**

15       Defendants contend that Plaintiff's supplemental state law claims alleging negligence,

16   conspiracy, intentional infliction of emotional distress, and the intentional torts of assault and battery

17   should be dismissed because Plaintiff failed to file a timely claim in compliance with the California

18   Tort Claims Act (CTCA).  (Mot. for Summ. J. at 16.)  Meanwhile, Plaintiff alleges that he has

19   exhausted his state tort claims as required by the CTCA.  (Opp'n at 13.)

20       In support of their motion to dismiss the state law claims, Defendants have filed various

21   exhibits, including copies of documents constituting the record of Plaintiff's claim numbers

22   G 555012 and G 555928 -- relating to the August 8, 2004 incident -- submitted to the Victim

23   Compensation and Government Claims Board of the State of California.  Included in these exhibits

24   is the written statement by a board program analyst certifying that the attached documents are true

25   and correct copies of the original records of Plaintiff's claims.  (Id.)

26       **1.**       **Applicable Law**

27       As a condition precedent to suit against a public entity or its employee, the CTCA requires

28   "the timely presentation of a written claim and the rejection of the claim in whole or in part."

**United States District Court**
For the Northern District of California

1  Mangold v. California Pub. Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995) (citing Snipes v. City

2  of Bakersfield, 145 Cal. App. 3d 861 (1983)).

3        The CTCA provides the requisites for the filing of a tort claim against employees and

4  agencies of the State of California.  Cal. Gov't Code §§ 900-998.3.  Where recovery of damages

5  from a public employee is sought, the CTCA requires the presentation, in accordance with its

6  provisions, of all claims for money or damages against the public entity.  Id. § 911.2.  A claim

7  relating to a cause of action for injury to a person shall be presented within six months of the date of

8  the incident.  Id.  When a claim that is required by § 911.2 to be presented not later than six months

9  after the accrual of the cause of action is not presented within that time, a written application may be

10 made to the public entity for leave to present a late claim.  Id. § 911.4.  The Victim Compensation

11 and Government Claims Board of the State of California shall grant or deny the application within

12 forty-five days after it is presented to the board.  Id. § 911.6.  If an application for leave to present a

13 claim is denied or deemed to be denied pursuant to § 911.6, a petition may be made to the state court

14 for an order relieving the petitioner from the filing deadline requirements of § 945.4.  Id. § 946.6.

15            **2.    <u>Analysis</u>**

16       The record indicates that Plaintiff submitted two applications to present a late claim

17 stemming from the August 8, 2004 incident.  The board received Plaintiff's first application for

18 claim number G555012 on June 9, 2005, and the second application for claim number G555928 on

19 June 26, 2005.  (Jan. 29, 2009 Req. for Judicial Notice, Ex. A, B; Opp'n, Ex. P-17.)  Plaintiff's first

20 application was denied October 20, 2005, and his second application was denied on November 17,

21 2005.  (Jan. 29, 2009 Req. for Judicial Notice, Ex. A, B; Opp'n, Ex. P-20.)  Both applications were

22 denied for "failure to meet the criteria of Government Code Section 911.6."  (Jan. 29, 2009 Req. for

23 Judicial Notice, Ex. A, B; Opp'n, Ex. P-18.)  The board informed Plaintiff that his recourse was to

24 "file a petition in court for relief from the requirements of Government Code Section 945.4" and that

25 he had "six months from the date of the denials to file a petition."  (Id.)

26       The record shows that Plaintiff failed to file a timely claim in compliance with the CTCA

27 prior to filing his state law claims in the Monterey County Superior Court.  It appears that he

28 attempted to file applications to present a late claim; however, his applications were denied.  (Jan.

United States District Court
For the Northern District of California

29, 2009 Req. for Judicial Notice, Ex. A, B; Opp'n, Ex. P-20.)  Further, there is no evidence in the record that Plaintiff petitioned the state court for an order relieving him from the filing deadline requirements of § 945.4.  Accordingly, Plaintiff failed to timely exhaust his state claims as required by the CTCA; therefore, these claims are DISMISSED without prejudice.

**III.    Plaintiff's Pending Motions**

**A.    Motion for Reconsideration**

On March 16, 2009, Plaintiff filed a motion for the Court to reconsider its February 25, 2009 Order dismissing Plaintiff's claims against Defendants Matthews, Arroyo, and Vogel-Pace.  (Mar. 16, 2009 Am. Mot. for Recons. at 1.)  Plaintiff's deadline to provide the Court with current addresses for Defendants Matthews, Arroyo and Vogel-Pace was January 20, 2009.  While Plaintiff attempted to file documents entitled "Notice of Current Addresses" of Defendants Matthews, Arroyo, and Vogel-Pace,[13] the Court found his attempts to be invalid, as explained in its February 25, 2009 Order:

> Even if the Court were to construe the allegations in Plaintiff's February 17, 2009 notice as the equivalence of providing the Court with the current addresses for Defendants Matthews, Arroyo and Vogel-Pace, the Court notes that it was filed almost a month after the deadline.  In light of his delayed response, Plaintiff's notice could be construed as a request for an extension of time to respond to the Court's December 18, 2008 Order.  However, Plaintiff fails to explain why any extension of time is appropriate.  Plaintiff's actions of trying to serve these Defendants at PBSP six days after the January 20, 2009 deadline shows that he was not diligent in trying to obtain their addresses, especially in light of the fact that the Court had already informed Plaintiff that it had been unsuccessful in serving these Defendants at PBSP.  As mentioned above, while Plaintiff alleges that he made another attempt to serve these Defendants on February 3, 2009 by "mailing a copy of three process services to" Mr. Currier as the "Legal Affairs Secretary on behalf of Defendants Matthews, Arroyo and Vogel-Pace," Plaintiff does not supply the Court with any proof to support his allegations.  Furthermore, because Plaintiff has not attached his proofs of service, he fails to supply the Court with any proof that these Defendants were properly served with process.  Finally, Plaintiff did not identify any other ongoing efforts to obtain the current addresses for Defendants Matthews, Arroyo and Vogel-Pace such that the Court ought to delay the dismissal of the claims against these Defendants for the failure to serve them.  Accordingly, the claims against Defendants Matthews, Arroyo and Vogel-Pace are DISMISSED without prejudice under Rule 4(m) because these Defendants were not timely served with

---

[13]   When the Court issued its February 25, 2009 Order, Plaintiff had filed two notices of the current addresses of Defendants Matthews, Arroyo, and Vogel-Pace, one on January 22, 2009 and the other on February 17, 2009.  Because the February 17, 2009 notice was the latest notice, the Court considered it in determining whether Plaintiff had provided the Court with these Defendants' current addresses.

1
2
3

process, the deadline by which to do so has passed, and Plaintiff has not shown good cause to further extend the deadline for the service of these Defendants. See Walker v. Sumner, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (prisoner failed to show cause why prison official should not be dismissed under Rule 4(m) because prisoner did not prove that he provided marshal with sufficient information to serve official).

4    (Feb. 25, 2009 Order at 3.)  Since the Court dismissed Defendants Matthews, Arroyo, and Vogel-

5    Pace, in addition to his amended motion for reconsideration, Plaintiff has filed three other notices of

6    the current addresses of Defendants Matthews, Arroyo, and Vogel-Pace dated March 2, 2009, March

7    11, 2009 and March 12, 2009.  In all three notices, Plaintiff claims that in a response to his first set

8    of interrogatories from Defendant Thomas requesting the addresses of Defendants Matthews,

9    Arroyo, and Vogel-Pace, Plaintiff was informed that the SVSP litigation coordinator will accept

10   service of the summons and complaints on behalf of Defendants Matthews, Arroyo, and Vogel-Pace.

11   (Mar. 12, 2009 Notice at 2-3; Ex. F-2, F-3.)[14]  Attached are two letters dated February 17 and 20,

12   2009 from Deputy Attorney General Maiorino, informing Plaintiff that he has "improperly" tried to

13   serve Defendants Matthews, Arroyo, and Vogel-Pace by mailing his service packet to Mr. Currier at

14   the CDCR's Office of Legal Affairs.  (Mar. 12, 2009 Notice, Ex. I-1, I-2.)  The February 17, 2009

15   letter also states, "On January 23, 2009, you were informed that the litigation coordinator's office at

16   Salinas Valley State Prison has advised the U.S. Marshall's Office that it will accept service of the

17   above-captioned action on behalf of M. Arroyo and C. Vogel-Pace." (Id., Ex. I-1.)  The February

18   20, 2009 letter states,  "On January 23, 2009, you were informed that the litigation coordinator's

19   office at Salinas Valley State Prison has advised the U.S. Marshall's Office that it will accept service

20   of the above-captioned action on behalf of C. Matthews." (Id., Ex. I-2.)  Based on this information,

21   Plaintiff claims that on March 1, 2009, he "prepared the 'Notice and Acknowledgment of Receipt -

22   Civil' and chose to have a non-party person Mr. Mark Goodwin serve [the processes upon

23   Defendants Matthews, Arroyo, and Vogel-Pace] by mailing them to the SVSP Litigation

24   Coordinator . . . ."  (March 12, 2009 Notice at 2.)

25        In Plaintiff's amended motion for reconsideration, he argues that the Court should find that

26   he has "properly served" Defendants Matthews, Arroyo, and Vogel-Pace "as of the initial process

27

28        [14]  Because the March 12, 2009 notice is the most recently-filed notice and contains the relevant exhibits, the Court will only cite to the March 12, 2009 notice in this Order.

**United States District Court**
For the Northern District of California

1   service of February 20, 2006," when he first served a summons and complaint on each of these

2   Defendants by sending it to the SVSP litigation coordinator.  (Mar. 16, 2009 Am. Mot. for Recons.

3   at 4.)  He claims that because "on February 28, 2009, Defendant Thomas inform[ed] Plaintiff that

4   the SVSP litigation coordinator is now accepting the service [on behalf of Defendants Matthews,

5   Arroyo, and Vogel-Pace]," the Court should reconsider the dismissal of his claims against them.

6   (Id.)

7           Where a district court's ruling has not resulted in a final judgment or order, reconsideration of

8   the ruling may be sought under Rule 54(b) of the Federal Rules of Civil Procedure, which provides

9   that any order which does not terminate the action is subject to revision at any time before the entry

10  of judgment.  See Fed. R. Civ. P. 54(b).  "Reconsideration is appropriate if the district court (1) is

11  presented with newly discovered evidence, (2) committed clear error or the initial decision was

12  manifestly unjust, or (3) if there is an intervening change in controlling law."  School Dist. No. 1J v.

13  ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

14          In the Northern District of California, no motion for reconsideration may be brought without

15  leave of court.  See Civil L.R. 7-9(a).  Under Civil Local Rule 7-9, the moving party must

16  specifically show: (1) that at the time of the motion for leave, a material difference in fact or law

17  exists from that which was presented to the court before entry of the interlocutory order for which

18  the reconsideration is sought, and that in the exercise of reasonable diligence the party applying for

19  reconsideration did not know such fact or law at the time of the interlocutory order; or (2) the

20  emergence of new material facts or a change of law occurring after the time of such order; or (3) a

21  manifest failure by the court to consider material facts which were presented to the court before such

22  interlocutory order.  See Civil L.R. 7-9(b).  Unless otherwise ordered by the court, no response need

23  be filed to a motion under the Local Rule.  See Civil L.R. 7-9(c).

24          Here, the Court finds that the requirements for leave to file a motion for reconsideration of its

25  February 25, 2009 Order are satisfied in the instant case.  As mentioned above, the Court's February

26  25, 2009 Order concluded that the claims against Defendants Matthews, Arroyo, and Vogel-Pace

27  were dismissed without prejudice under Rule 4(m) "because these Defendants were not timely

28  served with process, the deadline by which to do so has passed, and Plaintiff has not shown good

**United States District Court**
For the Northern District of California

cause to further extend the deadline for the service of these Defendants." (Feb. 25, 2009 Order at 3.) The Court notes that dismissal was without prejudice to Plaintiff pursuing his claims against Defendants Matthews, Arroyo, and Vogel-Pace in a new action.  In his motion, Plaintiff argues that he has finally been successful in identifying the person -- the SVSP litigation coordinator -- who can accept service on behalf of these Defendants.  Thus, Plaintiff is now alleging that "a material difference in fact or law exists" from that which was presented to the Court before entry of the interlocutory order for which the reconsideration is sought -- the Feb. 25, 2009 Order dismissing these Defendants under Rule 4(m).  It is also evident that Plaintiff did not know such fact or law at the time of the interlocutory order.  Therefore, the Court GRANTS Plaintiff leave to file a motion for reconsideration of its February 25, 2009 Order.  The Court now considers Plaintiff's arguments for reconsideration.

The record shows that as soon as Plaintiff discovered that the SVSP litigation coordinator could accept service on behalf of Defendants Matthews, Arroyo, and Vogel-Pace, Plaintiff immediately attempted to serve these Defendants by sending to the SVSP litigation coordinator on March 1, 2009 another summons and complaint addressed to each of these Defendants.  Since then, the Clerk has confirmed that the SVSP litigation coordinator has in fact accepted service on behalf of Defendants Matthews, Arroyo, and Vogel-Pace and forwarded these Defendants' signed request for representation forms to Defendants' counsel, Mr. Maiorino.  The Clerk has also verified that Mr. Maiorino is currently in possession of the aforementioned requests for representation forms.  Therefore, the Court finds that Plaintiff has asserted valid grounds for reconsideration of the Court's dismissal of Defendants Matthews, Arroyo, and Vogel-Pace.  Accordingly, Plaintiff's motion for reconsideration (docket no. 88) is GRANTED.  The Court's February 25, 2009 Order is VACATED in part as to the dismissal of Defendants Matthews, Arroyo, and Vogel-Pace under Rule 4(m).  Furthermore, the Court directs Mr. Maiorino to make an appearance on behalf of Defendants Matthews, Arroyo, and Vogel-Pace.

**B.**    **Motion to Seal and for Protective Order**

Also before the Court is Plaintiff's motion entitled, "Motion for Temporary, Preliminary and Permanent Injunction and Temporary Restraining Order Against the Illegal Release and Disclosure

**United States District Court**
For the Northern District of California

1    of the Petitioner's Confidential and Private Medical Health Records, and For the Return of the

2    Health Records to the Petitioner."

3         Plaintiff takes issue with the fact that Defendants submitted copies of Plaintiff's medical

4    records from May, 2004 to May, 2005 attached as Exhibit A to the declaration of their attorney,

5    Trace O. Maiorino, in support of their motion for summary judgment.  Plaintiff's main concern is the

6    "illegal release and disclosure of his confidential medical records" by PBSP prison officials.  (Pl.'s

7    Mot. to Seal and for Protective Order at 1.)  A total of 176 pages of Plaintiff's medical records from

8    May, 2004 to May, 2005 are now part of the record in this action.  (Maiorino's Decl., Ex. A.)

9    Plaintiff argues that he "did not verbally consent to nor verbally approve of, nor did [he] sign any

10   written consent for the release or disclosure of his confidential and private medical file records to

11   [Defendants]."  (Pl.'s Mot. to Seal and for Protective Order at 4.)

12        Plaintiff also raises a new claims of "illegal disclosure of his confidential and private medical

13   file" against the prison officials at PBSP, where he was previously incarcerated.  (Pl.'s Mot. to Seal

14   and for Protective Order at 3.)  However, the Court notes that Plaintiff's allegations in his original

15   complaint dealt with excessive force and deliberate indifference to his serious medical needs.

16   Plaintiff now seems to be challenging the "illegal" release of his medical records by prison officials

17   at PBSP; however, such allegations are not related to his original claims.  Therefore, such claims

18   need to be raised in a new civil rights action.

19        The Court construes Plaintiff's motion as a belated motion to seal and for a protective order

20   that would limit Defendants' use of his medical records to this litigation and would limit access to

21   the records.  Defendants have not opposed the motion.  Therefore, the Court GRANTS Plaintiff's

22   belated motion to seal and for a protective order.  With respect to any of Plaintiff's medical records

23   that are in Defendants' possession, Defendants must limit access to the records to their defense

24   counsel and themselves.  Neither defense counsel nor Defendants may use the records for any

25   purposes other than defending this lawsuit, unless otherwise permitted by law.  With respect to the

26   176-pages of Plaintiff's medical records that have been filed as part of the record under Exhibit A to

27   Deputy Attorney General Maiorino's declaration (docket no. 58), the Court directs the Clerk to file

28   these records under seal as directed below.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons,

1.      Defendants' motion for summary judgment and motion to dismiss (docket no. 57) is GRANTED in PART and DENIED in PART.   Defendants Pistone, Gibbs, and Grillo are entitled to summary judgment on Plaintiff's claim of deliberate indifference to his serious medical needs. Defendants Zamora, Pulido, Thomas, Baez, and Tsai are not entitled to summary judgment on Plaintiff's excessive force claim.  However, Plaintiff's claim against Defendant Thomas is DISMISSED without prejudice as unexhausted under the PLRA.  Finally, Plaintiff's state law claims alleging negligence, conspiracy, intentional infliction of emotional distress, and the intentional torts of assault and battery are DISMISSED without prejudice because Plaintiff failed to file timely state claims in compliance with the CTCA.

2.      Plaintiff's motion for reconsideration of the Court's dismissal of Plaintiff's claims against Defendants Matthews, Arroyo, and Vogel-Pace (docket no. 88) is GRANTED.  The Court's February 25, 2009 Order is VACATED in part as to the dismissal of Defendants Matthews, Arroyo, and Vogel-Pace under Rule 4(m).  No later than **seven (7) days** from the date of this Order, the Court directs Defendants' attorney, Deputy Attorney General Trace O. Maiorino, to make an appearance on behalf of Defendants Matthews, Arroyo, and Vogel-Pace in order for them to participate in settlement proceedings in this action, as directed below.

3.      Unless this case can be settled it will have to be tried.

4.      As mentioned in the Court's previous orders, the Northern District of California has established a Pro Se Prisoner Settlement Program.  Certain prisoner civil rights cases may be referred to a magistrate judge for a settlement conference.  The Court finds that another referral is in order now that Plaintiff's excessive force claim has survived summary judgment.  Thus, this case is once again REFERRED to Magistrate Judge Vadas for a settlement conference.

The conference shall take place within thirty (30) days of the date of this Order, or as soon thereafter as is convenient to the magistrate judge's calendar.  Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives

37

United States District Court
For the Northern District of California

and, within five (5) days after the conclusion of the conference, file with the Court a report regarding the conference.

5. Plaintiff's motion for reconsideration of the Court's February 26, 2009 Order regarding the deadline for the filing of the opposition (docket no. 83), which is construed as another motion for an extension of time to file his opposition, is GRANTED.

6. Plaintiff's request for an extension of time to correct and photocopy exhibits for his opposition (docket no. 86) is GRANTED.

7. Plaintiff's motion for additional exhibits (docket no. 91) is GRANTED.

8. Plaintiff's "Motion for Temporary, Preliminary and Permanent Injunction and Temporary Restraining Order Against the Illegal Release and Disclosure of the Petitioner's Confidential and Private Medical Health Records, and For the Return of the Health Records to the Petitioner" (docket no. 97), which has been construed as a belated motion to seal and for a protective order, is GRANTED. Because Exhibit A has been scanned on the Court's electronic database as part of Deputy Attorney General Maiorino's declaration, the Clerk is directed to remove the entire scanned declaration and all the attached exhibits (docket no. 58), to file a hard-copy of Exhibit A to this declaration under seal, and to re-scan the declaration and the remaining exhibits.

9. The Clerk shall send a copy of this Order to Magistrate Judge Vadas and to Plaintiff.

10. This Order terminates Docket nos. 57, 83, 86, 88, 91, and 97.

IT IS SO ORDERED.

DATED: 8/27/09

SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\CR.06\Moore2105.grantIP&denyIP-MSJ&MTD.wpd                38

1

2

3

4

5    UNITED STATES DISTRICT COURT

6    FOR THE

7    NORTHERN DISTRICT OF CALIFORNIA

8

9

10   JUMAH ALI-THOMAS MOORE,                    Case Number: CV06-02105 SBA

11              Plaintiff,                      **CERTIFICATE OF SERVICE**

12     v.

13   M THOMAS et al,

14              Defendant.
     _____/

15

16   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
     Court, Northern District of California.

17

18   That on August 27, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said
     copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
     envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
19   located in the Clerk's office.

20

21

     Jumah Ali-Thomas Moore D-62389
22   California Medical Facility-Vacaville
     P.O. Box 2000
23   Vacaville, CA 95676

24

     Dated: August 27, 2009
25
                                               Richard W. Wieking, Clerk
26                                             By: LISA R CLARK, Deputy Clerk

27

28

     P:\PRO-SE\SBA\CR.06\Moore2105.grantIP&denyIP-MSJ&MTD.wpd                    39